IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JULIA COLEMAN,

    Plaintiff,

v.                                                    Civil Action No. 3:12-cv-682

MASONIC HOME OF VIRGINIA,
LEE BYRD,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the defendants' motion to dismiss. The plaintiff, Julia Coleman, is a former employee of Masonic Home of Virginia ("Masonic Home"). She claims that her employer mistreated her on the basis of her race and sex, eventually forcing her to resign. Coleman now brings claims for sexual harassment, sexual discrimination, racial discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII").[1] The Court dismisses the sexual harassment and retaliation claims against Masonic Home due to Coleman's failure to exhaust administrative remedies. The Court also dismisses all claims against Lee Byrd because he, as the plaintiff's former supervisor, is not individually amenable to suit under Title VII. As to the remaining counts, the Court denies the motion, for Coleman alleges sufficient factual allegations to support her sexual and racial discrimination claims against Masonic Home. That said, because of the statute of limitations applicable to Title VII claims, her discrimination claims will be limited to a certain time frame, as discussed below.

---

[1] The plaintiff has numbered these claims 3.1 – 3.4. The Court shall instead refer to them as Counts I – IV.

## I.    STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a claim and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). When considering a motion to dismiss, the Court must accept all the complainant's factual allegations as true and resolve factual differences in that party's favor. *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). Nevertheless, the Court need not accept the complainant's legal conclusions or any other unreasonable or unwarranted arguments as true. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). In addition, the complainant must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to overcome a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255–56 (4th Cir. 2009).

The complaint instead "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint containing facts that are merely "consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557. A claim thus becomes "facially plausible" when the complainant offers "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79.

Assessing whether a claim achieves plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II. STATEMENT OF FACTS

The following facts are taken from the plaintiff's complaint and therefore construed in the manner most favorable to her claims, in keeping with the appropriate motion to dismiss standard. Coleman began work as a housekeeper at Masonic Home, a continuing care retirement community, in 2004. (Dk. No. 3, Ex. A1.) In 2005, Masonic Home reassigned her to the position of Environmental Floor Technician in its Residential Area. (Dk. No. 3, Ex. F, at 3.) Environmental Floor Technicians perform maintenance and clean floors and carpeted areas according to certain sanitary, antiseptic, and infection control guidelines. (*Id.*) Jennifer Burton supervised Coleman from the time of her reassignment until Coleman's resignation in November of 2011, though Burton was not always the plaintiff's immediate supervisor. (*Id.*)

Burton "constantly picked on" Coleman. (Dk. No. 3, Ex. A1.) As a result, the latter filed a complaint with Human Resources in 2009. (*Id.*) Human Resources found no particular wrongdoing, but cautioned Burton to be mindful of Coleman's concerns in the future. (Dk. No. 3, Ex. F, at 3–4.) Despite this warning, Burton continued to pick on her. Burton did not, however, treat the other Technicians—both Caucasian males—rudely, nor did she supervise them as harshly as she did the plaintiff. (Dk. No. 3, Ex. A1.) Indeed, one floor technician came and went as he pleased and even slept on the job with Burton's permission. (*Id.*) While Burton assigned Coleman 148 rooms to clean, she assigned another Environmental Floor Technician only thirty. (*Id.*) On top of that, Burton told residents that she was "going to fix [Coleman]," intimating that she was trying to get her fired. (*Id.*)

Masonic Home put Coleman on two separate performance improvement plans in 2011:

3

on February 11 for chronic tardiness, and on July 5 for damaging a marble floor. (Dk. No. 3, Ex. F, at 4.) Though Coleman admits to being tardy on twenty-five occasions (but only by two or three minutes each time), she disputes the reason for the floor damage. (Dk. No. 3, Ex. K, at 3–4.) The second performance improvement plan required her to attend floor-treatment training with Earl Moe Townes, during which Townes made comments of a sexual nature directly to Coleman. (Dk. No. 3, Ex. M, at 2–4.) Despite the comments, Coleman completed her training, and Masonic Home took her off the performance improvement plan on September 12, 2011. (Dk. No. 3, Ex. A, at 4.)

No longer able to tolerate Burton and Townes' harassment, Coleman resigned from Masonic Home around November 25, 2011. (*Id.*) She filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Council for Human Rights ("VCHR") on December 19, 2011, and received a right-to-sue letter on June 26, 2012. (Dk. No. 3, Exs. A, A1.) She filed suit in this Court on September 24, 2012. (Dk. Nos. 1–3.)

### III. <u>DISCUSSION</u>

Coleman makes a total of four claims against the defendants. She brings claims against Masonic Home and Byrd for sexual harassment (Count I), sex discrimination in violation of Title VII (Count II), racial discrimination in violation of Title VII, the Civil Rights Act of 1991, and the Lilly Ledbetter Fair Pay Act of 2009 (Count III), and retaliation in violation of Title VII (Count IV).[2]

*A. The Plaintiff Has Failed to Exhaust Administrative Remedies on Counts I and IV*

"Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies

---

[2] While Coleman asserts that Masonic Home's actions are prohibited by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009, she does not allege any facts that support these conclusions. The Court will therefore treat Count III as a Title VII claim alone.

4

by bringing a charge with the EEOC." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). A plaintiff's failure to exhaust administrative remedies concerning a Title VII claim deprives the federal court of subject matter jurisdiction over it. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009). Once a plaintiff has exhausted her administrative remedies, the administrative framework "plays a substantial role in focusing the formal litigation it precedes." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). The charges of discrimination filed with the administrative agency "limit the scope of any subsequent judicial complaint." *Id.* (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996)).

The factual allegations made in formal litigation must correspond to those set forth in the administrative charge. "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d at 247–48 (citing *Chisolm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).

Though Coleman's EEOC charge indicates only discrimination on the basis of sex, the right-to-sue letter states that the EEOC investigated both sex *and* race discrimination. (Dk. No. 3, Ex. A, at 4.) The notice sent to Masonic Home and Byrd on December 28, 2011 likewise indicates claims of both sex and race discrimination. (Dk. No. 3, Ex. D.) As a result, both claims are properly exhausted and may go forward. *See, e.g., Williams v. Mancom, Inc.*, 323 F. Supp. 2d 693, 695 (E.D. Va. 2004) (finding that the plaintiff exhausted the administrative remedies for her retaliation claim even though she did not check the "retaliation" box on her EEOC charge because it reasonably related to her claim for race and age discrimination, and because the EEOC investigated retaliation).

On the other hand, neither the plaintiff's charge nor the EEOC's documents indicate any allegations of or investigations into sexual harassment or retaliation. Indeed, Coleman's own narrative on the EEOC charge discusses Burton's disparate treatment as to her and a white, male coworker, but says nothing about sexual harassment or retaliation due to her complaints of discriminatory treatment. The EEOC's right-to-sue letter is similarly silent on these subjects. (Dk. No. 3, Ex. A, at 4.) Consequently, Counts I and IV are barred because they do not reasonably relate to Coleman's EEOC charge or the subsequent investigation. *See Chacko v. Patuxent Inst.*, 429 F.3d at 509–10.

The retaliation claim is additionally barred because Coleman resigned her employment *before* filing her charge with the EEOC. Because she was no longer an employee, she necessarily suffered every alleged incident of retaliation before filing her administrative claim. While claims of retaliation may be filed for the first time in federal court, this "exception to the exhaustion requirement does not apply when the alleged retaliation occurred before the plaintiff filed his or her administrative complaint." *Davenport v. Wal-Mart Stores East, L.P.*, 2008 WL 1984259, at *4 (E.D. Va. May 6, 2008) (citing *Wilson v. Dimario*, 1998 WL 168346, at *2 (4th Cir. Mar. 31, 1998); *Keegan v. Dalton*, 899 F. Supp. 1503, 1511 (E.D. Va. 1995)). Though she suffered the alleged acts of retaliation before filing her claim of discrimination with the EEOC and the VCHR, Coleman did not lodge any complaints about retaliation with those agencies. As a result, she failed to exhaust her administrative remedies.

In sum, because plaintiff failed to exhaust the administrative remedies for her claims of sexual harassment and retaliation, the defendants' motion to dismiss will be granted with respect to Counts I and IV.

### B. *The Plaintiff's Direct Claims Against Her Supervisor Must Be Dismissed*

Coleman has named Lee Byrd—Human Resources Manager at Masonic Home—as an individual defendant in this suit, which is not permitted. Title VII's prohibitions against discrimination only apply to employers with fifteen or more employees. 42 U.S.C. § 2000e(b). Congress did not intend, and courts have not allowed, suits against supervisors in their individual capacity. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998); *Baird ex. rel. Baird v. Rose*, 192 F.3d 462, 471–72 (4th Cir. 1999). "Only employers are liable for illegal acts of employment discrimination under Title VII . . . . Individual supervisors have no personal liability under Title VII . . . because they are not 'employers' within the meaning of [the] statute." *Johnson v. Quin Rivers Agency for Cmty. Action, Inc.*, 128 F. Supp. 2d 332, 335 (E.D. Va. 2001); *see also Jones v. Imaginary Images, Inc.*, 2012 WL 3257888, at *7 (E.D. Va. Aug. 8, 2012) (citing *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010)). All claims against Byrd are thus dismissed.

### C. *The Plaintiff's Sex and Race Discrimination Claims Are Properly Pleaded*

Coleman claims that Masonic Home discriminated against her due to her sex and race, in violation of Title VII (Counts II and III). Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Specifically, Coleman claims that she was picked on, demoted, and supervised more harshly than white, male coworkers, all of which contributed to her departure. In doing so, her claims survive a motion to dismiss.

The facts alleged in Coleman's complaint support a claim of disparate treatment.[3] A plaintiff properly pleads a case of discrimination through disparate treatment by showing that "she was treated less favorably" because she falls into one of the protected classes listed in the statute. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). Disparate treatment "is the most easily understood form of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Int'l Broth. of Teamsters v. U.S.*, 431 U.S. 324, 335 n. 15 (1977). For a claim of disparate treatment, "[p]roof of discriminatory intent is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Id.* (citing *Arlington Heights v. Met. Housing Dev. Corp.*, 429 U.S. 252, 265–66 (1977)). Here, the complaint allows for an inference of discriminatory intent.

A discrimination claim, whether based on sex or race, also requires proof of an adverse employment action. Although Coleman does not allege that Masonic Home actually fired her, she does contend that her employer's consistently less favorable treatment resulted in her constructive discharge, which is one form of adverse employment action. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004) (discussing "ultimate adverse action of constructive discharge, which led [the plaintiff] to resign").

---

[3] Coleman does not, however, allege facts supporting a claim for failure to promote. The typical failure to promote claim involves an open position for which the plaintiff applies but instead goes to an individual outside the plaintiff's protected class. *See Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129–30 (4th Cir. 1995) (citing *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994)). Here, Coleman does not allege that she applied for an open position. In fact, she makes no claims that a better opportunity even existed. Rather, Coleman claims that she was *demoted* in order to "orchestra[te] the upward mobility of another employee that was a young white male in his twenties, with no qualifying experience to be a floor tech." (Dk. No. 12 at 16.) Ultimately, Coleman left her position because of allegedly persistent mistreatment, which is why her claim is better understood as a form of constructive discharge than failure to promote or wrongful termination.

8

To establish constructive discharge, Coleman must demonstrate that Masonic Home deliberately made her working conditions "'intolerable' in an effort to induce [her] to quit." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001). This requires her to prove two elements: (1) the deliberateness of Masonic Home's actions, motivated by bias against Coleman's sex or race, and (2) the objective intolerability of the working conditions. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186–87 (4th Cir. 2004). Coleman is an African-American female who had two Caucasian, male coworkers. She alleges that Burton—the supervisor of all three individuals—singled her out for criticism and harsh treatment. She also alleges that she was demoted in order to promote a white male and that her growth in the company was "stymied" because of her sex and race. (*See, e.g.*, Compl. at 5, 6; Dk. No. 12 at 15–18.) The notes that she took while working (Compl., Exs. K–N) and her brief in opposition to the motion to dismiss chronicle her travails at the hands of Burton, Byrd, Townes, and Masonic Home. First, Coleman claims that Burton allowed her coworkers a more flexible schedule, better overtime hours, and better training. Second, she claims that the Caucasian males were allowed to be insubordinate and sleep on the job and that they were assigned a far lighter work load. Finally, she claims that on multiple occasions her supervisors said that they needed a male to do her job, and that they were trying to build up a file to fire her. (*See, e.g.*, Dk. No. 3, Ex. K, at 5–8, Ex. M, at 2–4, and Ex. N. at 4–5.) In the end, she decided to leave Masonic Home because of this discriminatory treatment. Such allegations are sufficient at this stage of litigation, so Coleman's claims of sex and race discrimination survive the motion to dismiss.

### D. Title VII's Statute of Limitations Restricts Her Claims

A plaintiff must file a charge with the EEOC within 300 days of the alleged violation and must file suit in court within ninety days of receiving a right-to-sue letter. 42 U.S.C. §§ 2000e-

5(e)(1), (f)(1). Because a civil action instituted pursuant to a right-to-sue letter must conform to the claims stated in the EEOC charge, a plaintiff cannot rely on discrete events that occurred outside the 300-day statute of limitations to establish liability, unless the plaintiff alleges "continuing violations" in her EEOC complaint. Although Coleman notes Burton's harsh treatment dating back to 2009, she did not check the "continuing violations" box on her EEOC charge. In fact, she repeatedly lists the earliest date of discrimination as January 1, 2011.

Of equal importance, Coleman's notes demonstrate her recognition of Burton's discriminatory intent long before her EEOC filing on December 19, 2011. She slept on her rights and thus cannot recover for untimely claims based on a continuing violations theory. *See Choma v. Blue Cross Blue Shield of Del.*, 2008 WL 4276546, at *6 (D. Del. Sept. 18, 2008) (rejecting the plaintiff's untimely allegations when she admitted to appreciating their discriminatory nature at the time but failed to file charges).

In sum, Coleman cannot rely on incidents of discrimination that occurred before February 22, 2011 (300 days prior to her filing of an EEOC charge) to form the basis of her discrimination claims. *See, e.g., Labady v. Gemini Air Cargo, Inc.*, 350 F. Supp. 2d 1002, 1011 (S.D. Fla. 2004). She can, however, use those incidents as background evidence tending to prove discriminatory actions within the 300-day window. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d at 962–63 ("[T]he district court ruled properly, recognizing that while the later allegations [that are time-barred] cannot stand as separate charges of discrimination for which TAS may be liable, they might be admissible as evidence at trial to support [the plaintiff's] properly asserted sex discrimination claim.") (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)).

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court grants the defendants' motion to dismiss in part and denies the motion in part.

The Court shall enter an appropriate order.

Date: <u>January 15, 2013</u>
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

11